## STATE *v.* CLARKE

### No. 2662

August 29, 1924.                    228 Pac. 582.

1. CRIMINAL LAW—TESTIMONY THAT PROSECUTRIX TOLD WITNESS SHE "HAD BEEN OUT" HELD HARMLESS.

In prosecution for rape of female under 18 years, testimony that prosecutrix told witness the following morning that she "had been out," though immaterial, was harmless.

2. CRIMINAL LAW—FAILURE TO OBJECT TO QUESTIONS UNTIL AFTER ANSWER PRECLUDES CONSIDERATION OF ADMISSIBILITY ON APPEAL.

Failure to object to question eliciting improper testimony until after answer was given precludes consideration of its admissibility on appeal.

3. CRIMINAL LAW—MOTION TO STRIKE ANSWERS PROPERLY DENIED WHERE NO OBJECTION TO QUESTION MADE.

Where defendant has opportunity to object to questions and remains silent, though any objection he may have is apparent, motion to strike the answer is properly denied.

4. CRIMINAL LAW—PROSECUTRIX'S MOTHER'S TESTIMONY AS TO WHEN SHE VISITED THE SCENE OF THE CRIME, LOCATION, ETC., HELD ADMISSIBLE.

In prosecution for rape of female under 18 years, prosecutrix's mother having testified, without objection, to going in an automobile with her daughter to the scene of the crime, her testimony as to about how long this was after the girl's statement to her, and as to location of the place and what she saw there, was admissible.

5. CRIMINAL LAW—PROSECUTRIX'S TESTIMONY IDENTIFYING TWO PIECES OF CLOTH FOUND AT SCENE OF CRIME HELD SUFFICIENT TO RENDER THEM ADMISSIBLE.

In prosecution for rape of female under 18 years, prosecutrix's testimony that, to the best of her knowledge, two pieces of cloth, found at the scene of the crime, were those used by her and defendant and thrown from defendant's automobile, *held* to render the cloth admissible; weight of the testimony being for the jury.

6. WITNESSES—PROSECUTRIX, CROSS-EXAMINED AS TO INCONSISTENT STATEMENTS ON FORMER TRIAL, MUST BE CONFRONTED WITH RECORD.

Prosecutrix, cross-examined as to inconsistent statements made on former trial of the case, must be confronted with the stenographic record, and where counsel relied entirely on his memory, his questions were properly excluded.

7. RAPE — WHETHER PROSECUTRIX TOLD WITNESS TWO WEEKS BEFORE CRIME SHE WAS GOING OUT WITH ANOTHER MAN HELD IMMATERIAL.

In prosecution for rape of female under 18 years, cross-question to prosecutrix whether she told Mrs. S., about two weeks before the crime, that she "was going out with a young man [not defendant] in a little roadster," *held* immaterial, not tending to show another than defendant committed the crime, nor unchastity of prosecutrix.

8. RAPE—REPUTATION FOR UNCHASTITY OF PROSECUTRIX UNDER 18 YEARS IS IMMATERIAL.

In prosecution for rape of female under 18 years, being under the statutory age of consent, evidence of unchastity or reputation for unchastity is immaterial.

9. CRIMINAL LAW—STATEMENT TO OFFICERS HELD NOT INADMISSIBLE AS FRAGMENTARY.

In prosecution for statutory rape, defendant's statement to sheriff, after arrest, answering question whether he did not ask a little girl to get into his car on a certain occasion, "That isn't what I said to her; I have nothing further to say until I see my attorney," *held* not inadmissible as a fragmentary statement.

10. CRIMINAL LAW—PERMISSION TO HAVE JURY VIEW SCENE OF CRIME WAS DISCRETIONARY.

In prosecution for rape of female under 18 years, court's permission to have the jury view the place of the alleged offense in the custody of a sworn officer, with another appointed to show them the place, was discretionary, under criminal practice act, sec. 341, especially in the absence of objection.

11. CRIMINAL LAW—SUGGESTION TO COURT OF IMPROPRIETY OF PERMITTING VIEW NOT EQUIVALENT TO OBJECTION.

In prosecution for rape of female under 18 years, defendant's suggestion to the court that the jury should not be permitted to view the scene of the alleged crime because there had been no preliminary proof that surrounding conditions were the same, was not equivalent to an objection for purpose of review.

12. CRIMINAL LAW—PROSECUTRIX'S AND MOTHER'S TESTIMONY IDENTIFYING PLACE OF CRIME AFTER VIEW BY JURY HELD ADMISSIBLE.

In prosecution for rape of female under 18 years, testimony of prosecutrix that the deputy district attorney, appointed by the court to point out the place when the jury was viewing the scene of the crime, parked his car the same as defendant had, and that the place was the same, and testimony of prosecutrix's mother, as to the place where she found pieces of cloth used as state's exhibits, with reference to the car, *held* properly admitted to identify the place, and not objectionable as taking evidence out of court.

13. RAPE—TESTIMONY AS TO HOW DEFENDANT WAS DRESSED ON CERTAIN OCCASION HELD INADMISSIBLE TO DISCREDIT PROSECUTRIX'S TESTIMONY.

In prosecution for rape of female under 18 years, question to witness as to how defendant was dressed on a certain occasion before the crime, to show defendant's custom of wearing an overcoat and discredit prosecutrix's statement that he wore a sweater at time of crime, *held* properly excluded as directed to a particular instance, instead of showing custom.

14. WITNESSES — CROSS-EXAMINATION OF ONE CLAIMING TO BE DEFENDANT'S COMMON-LAW WIFE AS TO EXACT RELATIONS, AS BEARING ON CREDIBILITY, HELD PROPER.

In prosecution for rape, one claiming to be defendant's common-law wife, having testified to an alibi, the state was

entitled to cross-examine as to her exact relations with defendant, as bearing on her bias, motives, and general credibility, and her former marriage; the subject being volunteered by her.

15. CRIMINAL LAW—STATE'S ARGUMENT THAT TESTIMONY WAS NOT DENIED HELD NOT PREJUDICIAL OR IMPROPER, AS COMMENTING ON HIS FAILURE TO TESTIFY.

Though defendant was only person present who could have denied testimony by officers as to his incriminating remark, state's argument to the jury that there was no denial *held* not prejudicial, or in violation of criminal practice act, sec. 311, as amended by Stats. 1915, c. 158, expressly prohibiting instructions commenting on defendant's failure to testify, and impliedly prohibiting argument commenting on it.

16. CRIMINAL LAW—COURT'S ORAL ANSWER TO JURY'S INQUIRY WHY DEFENDANT DID NOT TESTIFY HELD NOT REVERSIBLE ERROR, IN ABSENCE OF OBJECTION.

Where the jury returned into court after retiring, and asked why the defendant did not testify, court's oral answer, "I cannot answer that question; * * * that is a right which they have under the constitution of this state." etc., *held* not reversible error, in the absence of any exception or objection.

17. CRIMINAL LAW—ORAL INSTRUCTIONS, BY CONSENT OF PARTIES, ARE PROPER.

Oral instructions may be given by mutual consent of the parties.

18. CRIMINAL LAW—EXCEPTION TO ORAL INSTRUCTIONS, GIVEN WITHOUT CONSENT OF PARTIES, AND GROUNDS THEREOF, MUST BE BROUGHT TO COURT'S ATTENTION.

Oral instructions, given without consent of the parties, though improper, are not deemed excepted to, unless exception and grounds therefor are brought to court's attention.

See (1, 2, 3, 4, 5, 16, 17, 18) 16 C. J. sec. 1046, p. 547, n. 22; sec. 1222, p. 618, n. 17; sec. 1263, p. 634, n. 17; sec. 2090, p. 826, n. 94; sec. 2195, p. 874, n. 99, 3; sec. 2206, p. 881, n. 83, 84; sec. 2250, p. 904, n. 73; sec. 2286, p. 926, n. 64; sec. 2467, p. 1031, n. 95; p. 1032, n. 97; 17 C. J. sec. 3332, p. 62, n. 89 (new); sec. 3333, p. 64, n. 3; sec. 3345, p. 80, n. 77; p. 81, n. 78; sec. 3662, p. 317, n. 10; (5) 22 C. J. sec. 693, p. 599, n. 29; (6) 40 Cyc. p. 2656, n. 11; p. 2732, n. 74, 75, 76; p. 2733, n. 77, 78; (7) 33 Cyc. p. 1477, n. 64 (new); p. 1481, n. 82; p. 1482, n. 88 (new).

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Robert Clarke was convicted of having carnal knowledge of a female child under 18 years of age, and he appeals from judgment and order denying a new trial. **Affirmed. Rehearing denied.**

*Frame & Raffetto,* for Appellant:

Declarations of prosecutrix as to circumstances of alleged assault made on following and later days are not admissible on direct examination. They are not part of res gestae, are self-serving and hearsay. Only permissible question would be categorical one as to whether or not she stated she had been assaulted. In Re Kelly, 28 Nev. 491; State v. Campbell, 20 Nev. 122.

It was error to admit fragmentary answer of defendant to trick question of officers that "That is not what I said to her," the record showing answer was not completed and was in fact no statement at all. Underhill on Criminal Evidence, 182.

District attorney in his argument referred to statements imputed to defendant as having been made to officers and stated that such statements were not denied, thus by innuendo referring to defendant's failure to testify in his own behalf. That this had prejudicial effect is shown by fact that a juror, after many hours of deliberation, requested of court information as to why defendant had not testified. It was error for trial judge to give oral instruction to this question, not asked for or consented to by defendant's counsel.

Court erred in admitting rags in evidence which were not properly identified or properly connected with alleged crime.

Court erred in sustaining objections to questions of defendant's counsel on cross-examination, tending to show domination over prosecutrix by her mother, her insistance on prosecution, and her probable compulsion of prosecutrix's identification of defendant.

Court erred in excluding evidence of contradictory statements of prosecutrix, as to her relations with other men, at former trial merely on ground record was not produced. If she had answered in negative, it would have been necessary merely to produce record to ascertain the facts.

Permitting jury to view scene of alleged crime where stage was set and alleged transactions reproduced was error, in effect taking evidence out of court and actually

demonstrating prosecution's theory of case. Presence of other persons than one delegated to accompany jury was also error. Crim. Prac. sec. 341; State v. Lopez, 15 Nev. 407.

It was error to exclude evidence of defendant's customary mode of dress about time of alleged crime, since his identification depended very largely upon clothes he wore when identified, which were entirely different from those worn about time of alleged crime.

The cross-examination of witness by juror showed his knowledge of and prejudice against parties which he disclaimed on voir dire. Facts evidently within his knowledge showed bias, and evidence elicited was incompetent, not cross-examination, and prejudicial.

Court erred in permitting such wide cross-examination of defendant's wife, which was simple attempt to destroy her testimony by collateral attack on matters entirely disconnected with case. State v. Wilson, 39 Nev. 308.

*M. A. Diskin,* Attorney-General; *Thos. E. Powell,* Deputy Attorney-General; *L. D. Summerfield,* District Attorney; and *H. L. Heward,* Assistant District Attorney, for the State:

Defense in this case is alibi. If defendant did not say to prosecutrix what sheriff misquoted him as saying, what did he say? If he said anything, there is no alibi.

No corroboration is necessary in case of this kind.

As no evidence was introduced of a "complaint" alleging the crime, none of cases cited by counsel on this point applies. Such testimony as was given was either preliminary, given without objection or motion to strike, or negative.

It was not necessary to have rags positively identified. 22 C. J. 597–8. Identification equivalent to best opinion is sufficient. Thornton v. State, 113 Ala. 43.

Objections to questions as to prosecutrix's former statements of fear of her mother were properly sustained, since record of former trial was not used. 40 Cyc. 2732. 1 Wharton Crim. Evi. (10th ed.) 999; Tonopah Lumber Co. v. Riley, 30 Nev. 312.

Defendant's counsel did not object to inspection of premises. No evidence was taken during inspection. Method used is similar to diagram showing various objects and locations, which is admissible.

Evidence that certain clothing was worn at particular time is not probative that similar clothing was worn at another time. 22 C. J. 744. No attempt was made to show continuous custom that would bring such evidence within rule. 22 C. J. 748.

Cross-examination of Mrs. Clarke as to whether she was actual wife of defendant was proper to show bias and credibility.

Prosecuting attorney in analyzing testimony may state that certain evidence is uncontradicted, though defendant is only person who can contradict it. Rev. Laws, 7161, as amended 1915 Stats. 192, is intended merely to prevent impugning defendant's motive in not testifying. People v. Sutherland, 210 Pac. 965; State v. Hasty, 96 N. W. 1115.

Court was compelled to answer, and juror was entitled to be informed, as to why defendant did not take stand, it being on a point of law. The information was given as required by statute (Rev. Laws, 7207, 7456). As remark of court favored defendant, no prejudicial error was, in any event, committed. Only written instructions are deemed excepted to. No objection was made nor exception taken. State v. Clark, 36 Nev. 472; Rev. Laws, 7161, as amended 1915 Stats. 192; Sturgis v. State, 102 Pac. 71; State v. Williams, 220 Pac. 555.

No prejudicial error appearing in record, judgment should be affirmed. Rev Laws, 7469.

## OPINION

By the Court, DUCKER, C. J.:

The defendant was convicted of the statutory crime of having carnal knowledge of a female child under 18 years of age. He appealed from the judgment and order denying his motion for a new trial.

1. Objection is taken to the statement of a witness for the prosecution, Mrs. Oliver, who was asked the

following question with reference to the prosecutrix:

"Did she make a statement the following morning to you as to where she had been?"

The witness answered:

"Yes, she told me she had been out."

This declaration of the prosecutrix, standing alone, was immaterial, but entirely harmless.

**2, 3.** Objection is also taken to certain parts of the testimony of the mother of the prosecutrix as to declarations made by the latter to the former a short time after the commission of the offense charged. An examination reveals that no objection was interposed to any of the questions which elicited the testimony complained of until after the answers were given. We therefore decline to consider the point of admissibility sought to be raised here. No motion to strike the answers was made, and, if such had been made, a denial of the motion would not have been error, for the reason that it does not appear that any objection which defendant may have had to the questions and responses thereto was not apparent when the questions were asked, and for the further reason that it does not appear from the record that the answers were made before counsel had an opportunity to interpose his objection. A defendant cannot wait, trusting that the answer of a witness will be harmless or favorable, and then be heard to object when the answer is not to his liking. In the case of People v. Scalamiero, 143 Cal. 343, 76 Pac. 1098, the defendant was convicted of an assault with intent to commit rape upon a girl of 11 years of age. The same point was considered and determined in that case, and concerning it the court said:

"Many objections were interposed by counsel for appellant to questions propounded to witnesses on behalf of the prosecution and overruled by the court, and such rulings are assigned as error. With singular uniformity, however, counsel, except in a few instances, interposed his objections after the answers were given. In no instance does it appear that any of such questions were answered before counsel had an opportunity to

object. Under such circumstances it needs neither discussion nor citation of authorities to the proposition that objections and exceptions so taken are unavailing. A party cannot hazard whether the reply of a witness to an objectionable question will be favorable or unfavorable to him, and when it appears unfavorable then object to it. He must object when the question is asked and before the answer is given, and if he does not, he waives his right to complain of the admission of the testimony under the answer."

In disposing of the question we do not wish to be understood as intimating that a case might not arise in which an appellate court would properly feel that it was its duty to set aside a verdict of conviction and to grant a new trial for errors committed by the trial court, resulting in an unfair trial of the defendant, although no objection or exception was made or taken to the improper admission or exclusion of evidence, because of the mistake or misconduct, neglect, or incompetency of his counsel. No such case is before us.

4. Defendant complains of the testimony of the mother of the prosecutrix as to the latter going with her in an automobile to a spot outside of the city limits where the daughter claimed the crime was committed. No objection was taken to the question until after the reply was made. Later counsel for defendant interposed a timely objection to the question:

"About how long after the girl had described this spot, after the girl had made the statement to you, was it that you went out there?"

There was no error in allowing an answer to this question or in admitting subsequent testimony of the witness as to the location of the spot and what she saw there.

5. The witness identified two pieces of cloth marked State's Exhibit A as having been found there by her on this occasion. Error is predicated upon the admission in evidence of these pieces of cloth. The prosecutrix testified as to their use by the defendant and herself at the place, and that the cloth had been thrown out of

the automobile. The exhibit was material under the testimony concerning it, but it is insisted that its identification by the prosecutrix was insufficient. The prosecutrix testified that, to the best of her knowledge, these pieces of cloth were used on the night in question. This was a sufficient foundation for their admission in evidence. The weight of the testimony as to their identification was for the jury. 22 C. J. pp. 597, 598; State v. James, 194 Mo. 268–277, 92 S. W. 679, 5 Ann. Cas. 1007; State v. Clark, 27 Utah, 55, 74 Pac. 119.

6. The trial court sustained objections by the state to several questions asked of the prosecutrix on cross-examination by counsel for the defendant. The objections were properly sustained in each instance. There had been a former trial of this case in the same court in which the prosecutrix had testified. By the questions propounded it was sought to show, for the purposes of impeachment, that on such former trial she had testified differently in some respects from her direct testimony in this case. Her former testimony had been taken down by a stenographer appointed by the court and was within the reach of counsel for the defense. The rule of fairness required that on asking such questions she be confronted with the record of what was claimed to be her inconsistent statements. This could have been done either by securing a transcription of the same from the stenographer or by having him or her read them to the witness. But counsel relied entirely upon his memory in propounding the questions. His memory may have been faulty. The witness was entitled to read, or have the alleged inconsistent statements read to her, from the record. The rule is too well established to require the citation of specific decisions. In 40 Cyc. p. 2732, it is thus stated:

"In order to properly lay the foundation for impeachment of a witness by a statement which was made in writing by him or has been reduced to writing by himself or another, the writing containing such statement must be produced and shown or read to him before he is interrogated concerning whether or not he made it; and this principle applies to testimony which was given by

the witness before an examining court or magistrate, or *at a former trial of the case.* * * * "

7.   Counsel assigns as error the ruling of this court in sustaining an objection to the following question asked by him on his cross-examination of the prosecutrix.

"Did you not tell her [Mrs. Stoddard], shortly after you went to Mrs. Oliver's, and about two weeks before this occurrence, that you were going out with a young man in a little roadster?"

8.   The question was immaterial and properly ruled out. If the prosecutrix had answered in the affirmative, the reply would have had no tendency to show that some one else committed the crime charged, which was the avowed purpose of the question. Nor could such an answer have tended to prove unchastity or reputation for unchastity, and, even if it had, the answer would have been immaterial in this case, as the prosecutrix was under the statutory age of consent.

9.   Defendant assigns as error the ruling of the court in admitting in evidence an admission made by him in the presence of the district attorney, sheriff, and chief of police when he was in custody the day after he had been charged with the crime. The admission was testified to by the officials named, and admitted over defendant's objection. To show its materiality it will be necessary to state briefly some of the circumstances concerning the commission of the offense as sworn to by the prosecutrix. Defendant sought to prove an alibi as his defense. Prosecutrix was 14 years of age. She testified that on the night when the defendant made the assault upon her she was living with a woman by the name of Mrs. Oliver, whose residence was at 143 Stevenson Street. Earlier in the evening she had been at the Young Women's Christian Association and left there for the place where she was living at about 9 o'clock, going on Virginia Street, and then west on the left side of Second Street to the vicinity of the Catholic Church. Here the defendant drove up in a red Nash car. She testified:

"So then he told me to get in the car, and I wouldn't do it, and he asked me where I was going. I said I was going home. He told me to get in the car and he would

take me home. I wouldn't do it. So then he said he knew my mother, and I asked him who my mother was. He said she was the one with the little red Nash car. Then he told me to get in and he would take me home. So I got in, and instead of taking me home he put me out on the road."

The witness then proceeded to relate how the defendant took her in the car out of town a distance of $2 \, {}^{3}/_{10}$ miles from the place where she got in the car to the spot where he assaulted her. At the time of the admission claimed to have been made by the defendant in the presence of the officers named, as appears from their testimony, the sheriff said to him, as follows:

"I said to Mr. Clarke that he was arrested on a charge of rape and any statement he might make at this time could be used against him in the trial. He said he did not know anything about the case. I says to Mr. Clarke; I says, 'Didn't you, in the latter part of February, one evening about 9 o'clock, drive your automobile up to the curb near the Catholic Church and say to a little girl, 'Come on; get in; your mother sent me for you?' Mr. Clarke answered, he said, 'That isn't what I said to her.' He says, 'I have nothing further to say until I see my attorney.'"

The testimony of the district attorney and the chief of police as to what was said on this occasion by the defendant is the same as that of the sheriff. In view of the defense of an alibi made by the defendant, the relevancy of this admission is obvious. The effect of the admission is that he said something of a different nature to the girl, and was therefore the man who she said invited her into the automobile and took her out of the city. The weight of this admission was, of course, for the jury, in connection with all the other evidence in the case. It was not contended that the admission was involuntary, but it is insisted that it is an incomplete statement, and therefore inadmissible, under the rule stated in Underhill on Criminal Evidence, as follows:

"To allow the introduction of fragments of a conversation, admitting those indicative of the prisoner's

criminality and suppressing others which, by limiting or modifying the former, may establish his innocence, is utterly inconsistent with all principles of justice and humanity." Page 283, second edition.

We appreciate the force and justice of the rule but do not perceive the application here. The officers testified all the defendant said was: "That isn't what I said to her. I have nothing further to say until I see my attorney." This was a complete statement, conditioned only upon the proposition that the defendant might add to it upon advice of counsel. A reservation which was not acted upon, so far as the record discloses. There was no error in the ruling of the court in favor of its admissibility.

10, 11. It is contended that the court committed prejudicial error in permitting the jury to view the place where the crime was alleged to have been committed, for the reason that the inspection of itself could afford no information to the jury, and that no foundation was laid by the prosecution to show that the conditions were the same as at the time of the commission of the alleged offense. It was within the discretion of the court, under section 341 of the Criminal Practice Act (Rev. Laws, sec. 7191), to permit the jury in a body to view the place in which the offense was charged, in the custody of an officer sworn in accordance with the statute, and to appoint a person to show the place to them. Moreover, it does not appear that defendant's counsel made any objection to this procedure. He suggested to the court that there had been no preliminary proof to show that the conditions surrounding the place were the same as at the time of the occurrence, but a suggestion cannot be considered an objection.

12. On the resumption of the trial after the jury had viewed the place, the prosecutrix was recalled by the state and testified that the deputy district attorney, when the jury was taking the view, parked his car in the same manner, about in the same position, that the defendant parked his car on the night in question, and that the particular spot which the jury viewed was the same

spot to which defendant took her on that night. The mother of the prosecutrix was recalled, and testified as to the place where she had formerly found the pieces of cloth with reference to the car. The reception of this testimony is assigned as error, on the ground that it was equivalent to taking evidence out of court, and amounted to a demonstration of the state's theory of the case in violation of the statute mentioned. We think the contention is groundless. The statute empowers the court, in its discretion, to permit the jury to view "the place in which the offense is charged to have been committed, or in which any other material fact occurred." As said in State v. Hartley, 22 Nev. 342, 40 Pac. 372, 28 L. R. A. 33:

"A view of the premises is not taking evidence in the case. It is means provided by the statute to enable the jury more satisfactorily to weigh the evidence given in court."

The parking of the car on the spot and in the position in which the prosecutrix testified that defendant parked his car would enable the jury more satisfactorily to weigh the evidence in court, for the offense was not claimed to have been committed on the ground at the spot, but in the automobile. There is no evidence in the case contradicting the testimony of the prosecutrix in this respect. Conditions were made the same, which counsel for defendant suggested to the court might be changed. Defendant and his counsel were either there or had an opportunity to be there. The presence of the deputy district attorney and his parking the car in the place is not significant, for he was the person appointed by the court to point out the place to the jury, and his action more effectively performed that duty. The pieces of cloth testified to were material facts in the case and the jury was entitled to view the places where they were found. The effect of the testimony of the prosecutrix and her mother was merely to identify the place where the offense was charged to have been committed and where the pieces of cloth were found, and was not in violation of the statute.

The case of State of Nevada v. Lopez, 15 Nev. 407, cited and quoted from by defendant, is not in point. In that case it appeared, as stated by the court, that when the jury arrived at the premises they were sent to inspect, they found there a person named Chris Walsh, who was never even sworn as a witness in the case, and who, in response to questions addressed ,to him by members of the jury, pointed out to them all the special features of the "premises." In view of the theory of the prosecution and the defense, the court thought it was probable the jurors inquired as to the room where the homicide occurred and the place where the other persons slept, and that their inquiries as to these particulars were answered by Walsh. "Whether the answers were correct or incorrect cannot be known," said the court. "They may have been false and extremely prejudicial to the defendant, but whether they were or not makes no difference. It cannot be denied that the jury received material and vitally important evidence out of court from a witness who was not sworn, who was not confronted with the defendant, and as to whom there was no opportunity of cross-examination." Such is not the case here. The jurors asked no questions of persons present at the scene, nor can it be said that any information was volunteered to them by the physical act of the assistant district attorney, which amounted to taking evidence out of court. The prosecutrix and her mother were both witnesses sworn in the case, and full cross-examination was allowed.

13. There was no error in the ruling of the court in sustaining objections of the state to certain questions asked of Tony Pecetti, a witness for the defense. The questions related to the wearing of an overcoat by the defendant on a certain occasion in Carson, when the witness, who is a musician, was playing for a dance there. To the first question in this respect, which was ruled out, the witness could fix no definite date when he saw the defendant in Carson. The second question to which objection was sustained was:

"You may state to the jury, at the time you saw the

defendant, about the 27th day of February last, how he was dressed?"

The purpose of the question, as stated by counsel for the defendant, was to show that the usual manner and custom of the defendant about the time of the commission of the alleged offense was to wear an overcoat, for the purpose of throwing light on the probability or improbability of his being dressed in a sweater, as testified to by the prosecutrix. Conceding, without deciding, that the defendant's customary mode of dress may have been shown under the circumstances of this case, as bearing upon the question of the prosecutrix's identification of him, the question was directed to a particular instance and had no tendency to prove custom. It was properly ruled out.

14. The court did not abuse its discretion in the latitude allowed the state on the cross-examination of Margery Clarke. She was defendant's principal witness as to the defense of an alibi interposed by him, and claimed to be his common-law wife. The state was entitled on cross-examination to inquire as to her exact relations with the defendant as bearing upon her bias motives and general credibility. The questions relating to a former marriage were not improper. The subject was volunteered by the witness. No objection was interposed to the questions complained of, which were asked of this witness by one of the jurors.

15. The assistant district attorney, in his argument to the jury referring to the admission made by the defendant as testified to by the officers, said:

"Now, gentlemen, I want to urge upon you that Clarke made that remark, and he said, 'That isn't what I said to her.' You know Summerfield, you know Hillhouse, and you know Kirkley. Are they the type of men that are going to lie? And, gentlemen, if they were going to lie to you, why not pad the story a bit—why not put in a few details? Oh, if they were going to tell you a phony story, gentlemen, how simple, how easy, to get together on some other remark that Clarke had made. But the fact is he was caught unawares. He made that remark,

realized that he had put his foot in it, and shut up like a clam, and, gentlemen of the jury, there is not the slightest denial before you of that remark."

An exception to the last remark was taken by counsel for the defendant. A few moments later the assistant district attorney said:

"Put it this way: We have got three witnesses, three able, reputable witnesses to tell you that remark was made, and there is no denial of that remark presented to you."

An exception was again taken by defendant's counsel. The remarks of counsel for the state are assigned as misconduct prejudicial to the defendant. The defendant did not take the stand as a witness in the case. In this regard, section 311 of the Criminal Practice Act, as amended by Stats. 1915, p. 192, provides:

"Nothing herein contained shall be construed as compelling any such person to testify. No instruction shall be given relative to the failure of the person charged with the commission of crime or offense to testify, except, upon the request of the person so charged, the court shall instruct the jury that, in accordance with a right guaranteed by the constitution, no person can be compelled, in a criminal action, to be a witness against himself."

As the statute expressly prohibits the court from instructing the jury, relative to the failure of a person charged with crime, to testify, except upon request of the person so charged, it impliedly prohibits the state's attorney from commenting on such failure in his argument to the jury. It is apparent from the remarks of the assistant district attorney that there was no direct reference to the failure of the defendant to take the stand as a witness and deny making the admission attributed to him. But his counsel contends that, as there were only three persons present besides the defendant when the admission was made as testified to by such witnesses, the only person who could have denied it was the defendant, and therefore, the remarks made to the jury were a direct reference to his failure to testify,

which is equally obnoxious to the statute. The jurors had probably observed that the defendant did not testify; so, even though the effect of the remarks may have directed the attention to this fact, we fail to see how he could have been prejudiced by it. Moreover, the assistant district attorney was within his rights. The statute is designed to prevent the jury from drawing an unfavorable inference from the fact that a defendant does not testify in his own behalf; but it does not go so far as to take from a prosecuting officer his right to comment upon all or any part of the testimony, and draw such inferences therefrom as may tend to show its truth or falsity. He may draw any legitimate inference towards that end.

As said by the court in State v. Harrington, 12 Nev. 125:

"All circumstances which it is proper for the jury to consider it is proper for counsel to comment upon."

It was certainly proper for the jury, in determining whether the defendant made the admission attributed to him, to consider that three witnesses had testified that he did, and that their testimony was not contradicted. This was as far as the assistant district attorney went in his argument on this phase of the testimony. The same point was raised in Clinton et al. v. State, 56 Fla. 57, 47 South. 389. On this phase of the case the court said:

"Objections were taken to the argument of counsel to the jury to the effect that certain testimony was uncontradicted, or stood uncontradicted and undenied, as a comment upon the failure of the accused to become a witness, based upon the fact that the testimony was as to private conversations between the witness and the accused. We are cited to cases holding, in substance, that the state will not be permitted to argue by innuendo that the defense could have taken the stand and denied the testimony; but no such showing is made here. The preexisting right of the state to argue the character of the evidence adduced by it has not been taken away by the statute permitting the accused to be a witness

and forbidding the state to comment upon his failure to accept that privilege. The state still has the right to direct the attention of the jury to that portion of the evidence as to which there is conflict and to that portion which is without conflict. Testimony may in a sense be contradicted in various ways, as by inherent improbability, by cross-examination, or by the demeanor of the testifier. So long as the state does not exercise its preexisting right, so as to make it directly or covertly a comment upon the failure of the accused to voluntarily become a witness, the law is not violated"—citing cases.

The same view has been taken in a number of cases collected in respondent's brief. State v. Hasty, 121 Iowa, 507, 96 N. W. 1115; State v. Smokalen, 37 Wash. 91, 79 Pac. 603; People v. Paisley, 299 Ill. 576; 132 N. E. 822; People v. Sicks, 299 Ill. 282, 132 N. E. 573; State v. Krittenbrink (Iowa), 192 N. W. 157; People v. McNamara (Cal. App.), 224 Pac. 476; People v. Sutherland, 59 Cal. App. 462, 210 Pac. 965.

16. The jury returned into court after it had retired to deliberate upon the case, and one of the jurors asked the court why the defendant was not put upon the witness stand. To this question the court replied:

"I cannot answer that question. That is a right which they have, and that is not supposed to be held against anybody. It is a right which they have under the constitution of this state. If that is all, it is well to vacate, and the defendant will be remanded to the custody of the officer, and the officer will take charge of the jury."

17, 18. Appellant contends that this statement of the court constitutes reversible error, firstly, in that it is an oral instruction, and the record does not show affirmatively the consent of the defendant to the giving of an oral instruction; and, secondly, in that it was in violation of the statute hereinbefore quoted, as no instruction upon the subject of the defendant's failure to testify had been requested by him. An answer to each of these objections is that no exception was taken to the statement of the court. We need not decide whether the statement complained of amounted to an instruction.

It was oral. Oral instructions may be given by the mutual consent of the parties, but are not deemed excepted to when given without such consent. An exception and the ground thereof should have been brought to the attention of the trial court at the time the statement · was made. State v. Clark, 36 Nev. 472–485, 135 Pac. 1083.

For the same reason, the question sought to be raised by defendant that the reply of the court to the juror was in violation of the statute, concerning the failure of the defendant to testify, because no instruction on this point had been requested by defendant, is not properly before the court. A careful consideration of all the evidence convinces us that the defendant received a fair trial and that there is sufficient evidence to justify the verdict.

The judgment is affirmed.

### ON PETITION FOR REHEARING

November 12, 1924.

*Per Curiam*:

Rehearing denied.